IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ROBERT SCOTT HAMLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:07-cv-01027 |
| | ) | |
| TRANS-DAPT OF CALIFORNIA, INC., | ) | Judge Thomas A. Wiseman, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Robert Scott Hamlin brings this action against defendant Trans-Dapt of California, Inc. ("Trans-Dapt") for damages and injunctive relief on the grounds of alleged copyright infringement and violation of the Tennessee Consumer Protection Act ("TCPA"). Trans-Dapt concedes that it infringed upon Hamlin's copyrighted work. Now before the Court is Trans-Dapt's Motion for Partial Summary Judgment (Doc. No. 24) in which the defendant seeks judgment in its favor on three specific legal issues: (1) that Hamlin is entitled to one statutory damages award based on the infringement of one copyrighted work rather than numerous statutory damages awards based on the alleged number of infringements; (2) that Trans-Dapt's infringement was "innocent"; and (3) that Hamlin has failed to state a valid claim under the TCPA.

For the reasons set forth below, the Court finds that Trans-Dapt is entitled to judgment in its favor as a matter of law as to the first and third issues presented: Hamlin will be entitled to statutory damages based upon the infringement of one copyrighted work; and his TCPA claim must be dismissed. Material factual disputes, however, preclude summary judgment on the question of whether Trans-Dapt should be considered an innocent infringer.

## I. FACTUAL BACKGROUND

For purposes of the defendant's motion, the basic facts are undisputed unless otherwise indicated. On or about August 8, 2003, plaintiff Hamlin created a non-dramatic literary work entitled "Project Z06 S10" which he registered with the Copyright Office of the United States under number TX 5-860-337. (Project Z06 S10 is hereafter referred to as the "Copyrighted Work" or the "Work"). The copy of

the Copyrighted Work that Hamlin deposited with the United States Copyright Office does not contain a copyright notice. Although Hamlin certified under oath that the copy of the Work that he attached as an exhibit to his Complaint was a true and accurate copy of the Copyrighted Work, the exhibit version does have a copyright notice as well as certain other minor changes and additions. Hamlin describes his Work as a "how-to book, a guide or manual that provides photographs and text to assist the reader with the installation of a 405 horsepower Z06 engine into a Chevrolet pickup truck." (Compl. ¶ 10.)

At some point after the copyright was issued on November 11, 2003 but sometime before April 2007, Neil Matranga, while employed by Trans-Dapt and in his capacity as products manager for Trans-Dapt, purchased a copy of the Copyrighted Work off the internet site eBay. According to Joe Jacques, a Trans-Dapt employee who was familiar with the copy of the Work obtained from eBay, he did not recall that the copy from eBay displayed a copyright notice anywhere on it. Another Trans-Dapt employee, Kevin Vandergriff, has affirmatively testified that the copy obtained from eBay did not contain a copyright notice. Trans-Dapt has not produced the copy of the Copyrighted Work that it obtained from eBay, but Hamlin disputes Trans-Dapt's allegation that its copy did not contain a copyright notice only by stating that this "fact is solely within the knowledge, possession, and control of Defendant." (Doc. No. 35, Response to ¶ 8.) Hamlin has not presented any evidence regarding his efforts to ensure that the copies of the Work he sold or distributed contained a copyright notice or when he began including a copyright notice on the copies of the Work that he distributed.

In any event, after it obtained a copy of Hamlin's Work, Trans-Dapt began publishing and distributing a non-dramatic literary work headed "LS01, LS06 5.7L or Vortec 4.8, 5,3 or 6.0L ENGINE INTO A TWO-WHEEL DRIVE 1982-1999 CHEVY S-10 OR GMC S-15." According to Trans-Dapt, the referenced document is an instruction sheet (hereafter, "Instruction Sheet") included with motor mount brackets that Trans-Dapt manufactured and sold. (*See* Doc. No. 1-9.) Trans-Dapt admits that its original Instruction Sheet reproduced copies of certain photographs first published in Hamlin's Copyrighted Work. For purposes of summary judgment, Trans-Dapt also admits that the Instruction Sheet included "a small amount of the text" copied from Hamlin's Work. Hamlin testified in his deposition that he became aware that Trans-Dapt was copying his Work when he ordered a set of motor mount brackets from Trans-Dapt

and discovered that the packaging information enclosed with the brackets included photographs and text from his Copyrighted Work.

Trans-Dapt allegedly became aware of Hamlin's copyright in the Work when it received a "cease and desist" letter dated April 13, 2007 from Hamlin's counsel.  That letter states in relevant part:

> Your instruction sheets for the 4536 Motor Mount Bracket ("the 4536 instruction sheets") . . . includes [sic] several photographs that appear to be copies of copyrighted photographs owned by Mr. Hamlin. . . .
>
> Mr. Hamlin uses his copyrighted photographs in a project book he sells to customers who are interested in  installing a General Motors LS1 engine into an S-Series truck. . . .
>
> Mr. Hamlin demands that you immediately cease and desist from using his copyrighted materials in any manner, including in your 4536 instruction sheets.

(Doc. No. 25-3.)  Trans-Dapt asserts that it understood this letter to indicate that only the photographs in the Copyrighted Work were copyrighted, not the text.  Consequently, in response, Trans-Dapt revised its Instruction Sheet to replace the photographs with drawings but continued using some of the text from the Copyrighted Work.  The parties have not indicated to the Court what portions of the text in the Copyrighted Work were reproduced in Trans-Dapt's Instruction Sheets.

Hamlin filed this law suit for copyright infringement in October 2007.

## II.    STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A motion for summary judgment requires that the Court view the " 'inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion.' "  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.' "  *Matsushita*, 475 U.S. at 587.  "The mere existence of a scintilla of evidence in support of plaintiff's position[, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).  If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment

should be granted.  *Anderson*, 477 U.S. at 249–52.  "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247–49).

**III.    LEGAL ANALYSIS**

> **A.    Hamlin Is Entitled to One Damages Award Based on Infringement of One Copyrighted Work.**

In the "Prayer for Relief" portion of his Complaint, Hamlin requests that the Court "find Defendant liable to Plaintiff for willful copyright infringement for each separate act of infringement" and that it order the defendant to pay, in the alternative to actual damages, statutory damages "for each infringement of each work infringed."  (Compl. at 8.)  In its motion, Trans-Dapt asserts that Hamlin has failed to raise a viable claim for more than one award of statutory damages based on the fact that only one copyrighted work was infringed.  The Court agrees, and finds that Hamlin's argument for damages based on the number of infringements is premised on a prior version of the Copyright Act, which was amended in 1976.

The current section of the Copyright Act allowing recovery of "statutory damages" states in relevant part:

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages *for all infringements involved in the action, with respect to any one work*, for which any one infringer is liable individually[.]

17 U.S.C. § 504(c)(1) (emphasis added).  Although this provision certainly has the potential to generate confusion regarding whether the term "work" refers to an *infringed* work or an *infringing* work, most courts agree that whatever ambiguity might have arisen was effectively dispelled by the statute's legislative history.  The relevant history clearly documents Congress's intent, as follows:

> Although . . . an award of minimum statutory damages may be multiplied if separate works and separately liable infringers are involved in the suit, a single award . . . is to be made "for all infringements involved in the action."  A single infringer of a single work is liable for a single amount between $[7]50 and $[3]0,000, no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated, or occurred in a related series.

H.R. Rep. No. 94-1476, 2d Sess., at 162 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5778.

The vast majority of courts to consider the issue have therefore held that multiple "infringements" of the same copyrighted work by one infringer do not result in multiple statutory damages awards.  For instance, in *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990), the defendant infringed

plaintiff's copyright in the characters of Mickey Mouse and Minnie Mouse by printing t-shirts with their images on them, without permission. The trial court awarded damages in the amount of $15,000 for each of six copyright infringements, apparently because the infringing works showed Mickey and Minnie in a variety of different poses and because Disney had overlapping copyrights in the images of Mickey and Minnie in different poses. On appeal, the D.C. Circuit rejected the district court's damages calculation and found only two copyright violations, one for Mickey and one for Minnie:

> The district court erred in assessing damages based upon six "violations," mistakenly focusing on the number of infringements rather than on the number of works infringed. Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements.

*Walt Disney Co.*, 897 F.2d at 569.

The First Circuit reached the same conclusion in *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183 (1st Cir. 2004), citing *Walt Disney Co.* as basically the only other court that had directly considered the issue at that point. In *Venegas-Hernandez*, the defendant had published recordings of two copyrighted songs on sixteen different albums by different artists. The trial court originally entered a default judgment against the defendant and also accepted the plaintiffs' representation that they were entitled to statutory damages under 17 U.S.C. 504(c)(1) based upon the number of albums containing the copyrighted songs. On a motion to reconsider, a different district judge denied the defendant's motion to set aside the default but granted its motion to reduce the damages from $1,600,000 ($100,000 for willful copyright violation multiplied by sixteen infringing albums) to $200,000 ($100,000 multiplied by two infringed works). The court noted that there were only two copyrighted works infringed and concluded that the larger amount was based on an incorrect reading of 17 U.S.C. § 504(c)(1). On appeal, the First Circuit first acknowledged the potential ambiguity inherent in the statutory language but, after reviewing various treatises as well as the legislative history of the statute and prior court opinions touching on the issue, affirmed. The court stated:

> The prevailing reading in the circuits is the one that we join: under § 504(c) the total number of "awards" of statutory damages that a plaintiff may recover in any given action against a single defendant depends on the number of works that are infringed and the number of individually liable infringers and is unaffected by the number of infringements of those works. That reading works in the overall context of the statute, flows naturally from the statutory language, and is supported by the legislative history.

*Id.* at 194 (citation omitted). *See also WB Music Corp. v. RTV Comm'n Group, Inc.*, 445 F.3d 538, 540, 541 (2d Cir. 2006) (citing *Venegas-Hernandez*, 370 F.3d at 192–93, in support of the principle that "the total number of awards of statutory damages that a plaintiff may recover in any given action depends on the number of works that are infringed and the number of individually liable infringers, regardless of the number of infringements of those works," and holding that the defendants' infringement of thirteen copyrights by copying thirteen songs onto seven distinct CD products warranted thirteen statutory damage awards); *Columbia Pictures Television v. Krypton Broadcasting*, 106 F.3d 284, 294 (9th Cir. 1997) (affirming a statutory damages award based on the number of works infringed, where neither party challenged the interpretation of § 504(c)(1)), *rev'd on other grounds*, *Feltner v. Columbia Pictures Television*, 523 U.S. 340 (1998); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993) (where there was only one infringing work so the issue was not directly presented, stating: "The current statute shifts the unit of damages inquiry from number of infringements to number of works [infringed]."); *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143 (5th Cir. 1992) (referencing § 504 in support of its interpretation of 17 U.S.C. § 412, explaining: "Under [§ 504(c)(1)], the total number of 'awards' of statutory damages . . . that a plaintiff may recover in any given action depends on the number of *works* that are infringed and the number of individually liable *infringers*, regardless of the number of *infringements* of those works." (emphasis in original)).

In support of his claim for damages based on the number of infringements, Hamlin cites *Iowa State University Research Foundation v. American Broadcasting Cos.*, 475 F. Supp. 78, 82 (S.D.N.Y. 1979), *aff'd*, 621 F.2d 57 (2d Cir. 1980); *Milene Music, Inc. v. Gotauco*, 551 F. Supp. 1288, 1297 n.14 (D.R.I. 1982); and *Broad Music Inc. v. Larkin*, 672 F. Supp. 531, 535 (D. Me. 1987). His reliance on these cases is misplaced. First, the holding in *Iowa State* was explicitly "grounded in the old Copyright Act of 1909, . . . which was in force at the time of [the defendant's] infringement but which has since been substantially revised." 475 F. Supp. at 79. As the Second Circuit subsequently noted, "[u]nder the 1909 Act, statutory damages were available for 'each infringement that was separate,' whereas "[t]he current statute shifts the unit of damages inquiry from number of infringements to number of works," *i.e.*, the number of works infringed. *Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993). In an even more recent case, the Second Circuit expressly approved the conclusion in *Venegas-*

*Hernandez* that under the current version of the Copyright Act "the total number of awards of statutory damages that a plaintiff may recover in any given action depends on the number of works that are infringed and the number of individually liable infringers, regardless of the number of infringements of those works," and that "§ 504(c)(1) disassociates the award of statutory damages from the number of infringements by stating that 'an award' (singular tense) of statutory damages is available for 'all infringements involved in the action' regarding any one work." *WB Music Corp. v. RTV Comm'n Group, Inc.*, 445 F.3d 538, 540 (2d Cir. 2006) (quoting *Venegas-Hernandez*, 370 F.3d at 192–93, and *Mason*, 967 F.2d at 143–44).

In the second case cited by Hamlin, the court stated, without analysis, that "[d]amages are calculated by multiplying the damage award by the number of times each copyrighted work is infringed upon." *Milene Music*, 551 F. Supp. at 1297 n.14. As indicated above, that was true under the old law, and the court appears not to have recognized that the law pertaining to the damages calculation had been amended in 1976. Regardless, even if *Milene Music* might otherwise have had any persuasive value, that opinion was abrogated by the First Circuit's decision in *Venegas-Hernandez*, discussed above. Finally, the third case, *Broadcast Music, Inc.*, simply does not support Hamlin's position. The plaintiffs there proved violation of nine copyrights in nine different songs and were awarded statutory damages of $1500 for violation of each copyright, regardless of the number of times each copyright was infringed. 672 F. Supp. at 535.

Accordingly, Trans-Dapt's motion for partial summary judgment as to Hamlin's claim for damages based on the number of infringements will be granted. Hamlin will be entitled to one award of statutory damages.

**B.      Innocent Infringement Status**

The Copyright Act provides, as indicated above, that a copyright holder may elect to recover statutory rather than actual damages, "in a sum of not less than $750 or more than $30,000" for any work infringed by any one infringer. 17 U.S.C. § 504(c)(1). That range of damages, however, may vary depending upon whether the infringement is proven to be willful, unwitting or neither:

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not

aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c)(2).

In other words, if the plaintiff fails to carry his burden of showing a willful infringement and the defendant fails to establish his burden of proving an unwitting or innocent infringement, then the default range of $750 to $30,000 applies. *Cf. Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) ("It is plain that 'willfully' infringing and 'innocent intent' are not the converse of one another. Thus, it is possible in the same action for a plaintiff not to be able to prove a defendant's willfulness, and, at the same time, for the defendant to be unable to show that it acted innocently.") Other factors are also relevant to a determination of a statutory damages award. *See, e.g., Jobete Music Co. v. Johnson Comm'ns, Inc.*, 285 F. Supp. 2d 1077, 1086 (S.D. Ohio 2003) ("In determining the amount of [statutory] damages to be awarded, courts generally consider (1) the infringer's blameworthiness, *i.e.*, whether the infringement was willful, knowing, or innocent, (2) the expenses saved and the profits reaped by the defendants in connection with the infringement, and (3) the revenues lost by the plaintiffs due to the defendants' conduct.").

Trans-Dapt here asserts that it is entitled to summary judgment on the question of whether its infringement was innocent, based on its assertion that the copy of the Copyrighted Work it obtained had no copyright notice and its employees relied on the absence of a notice to assume the Work was in the public domain. In support of this assertion, two Trans-Dapt employees have testified that the copy Trans-Dapt received did not have a copyright notice on it. Specifically, Kevin Vandergriff, Vice President of Operations for Trans-Dapt, submitted an Affidavit in support of Trans-Dapt's motion in which he attests as follows:

> On behalf of my employer, I relied on the copy of "Project Z06 S10" that Neil Matranga (a former employee of Trans-Dapt) purchased off the internet. . . .  I was misled into believing that "Project Z06 S10" was not copyrighted because it did not have a notice of copyright or any mention of being copyrighted. . . .

(Vandergriff Aff. ¶¶ 3, 4 (Doc. No. 25-5, at 1).)  Likewise, Trans-Dapt employee Joe Jacques testified as follows:

> Q.    Okay.  Now, at the time Mr. Matranga brought you a copy of the Plaintiff's work, were you aware that Plaintiff had registered it with the Copyright office?

A.     No.

Q.     Okay.  Did you do anything to check to see whether he had?

A.     I read the book from cover to cover.  I never saw any copyright –

Q.     Okay.

A.     – or any publishing date or anything to that matter.

Q.     Does your work require you to be cognizant of copyright protocol?

A.     No.

(Jacques Dep. at 9:8–22 (Doc. No.25-4, at 10).)

In addition, Trans-Dapt asserts that the cease-and-desist letter only referred to the photographs as being copyrighted and was not sufficient to provide notice that the text of Hamlin's Work was also copyrighted.

Hamlin does not actually point to any countervailing evidence but the Court nonetheless finds that Trans-Dapt's evidence is insufficient to warrant judgment as a matter of law on the issue of whether the copyright infringement was "innocent."  While Vandergriff and Jacques claim that the version of the Work that Trans-Dapt received did not carry a copyright notice, Trans-Dapt has not offered that document into evidence, nor has it actually explained Vandergriff's or Jacques' relationship with the work.  Jacques actually admits that he had no reason to be cognizant of copyright protocol, and the Court has difficulty believing that Jacques would have had reason to notice whether the Work bore a copyright notice.  Similarly, a jury would not be required to believe Vandergriff's testimony, particularly if Hamlin is able to offer evidence at trial regarding what efforts he took, if any, to ensure that each copy of the Work that he sold carried a copyright notice.

Moreover, with regard to the infringement that allegedly occurred after Trans-Dapt's receipt of the cease-and-desist letter,[1] the question is whether Trans-Dapt's interpretation of Hamlin's attorney's cease-and-desist letter as indicating that only the photographs were copyrighted was reasonable.  While the letter only expressly stated that the photographs were copyrighted, the letter also clearly stated that the copyrighted photographs were part of a book or pamphlet.  Further, contrary to Trans-Dapt's

---

[1] Trans-Dapt has apparently not conceded that it violated Hamlin's copyright in the text of the Copyrighted Work except for purposes of its motion for partial summary judgment.

representation, the letter did not direct Trans-Dapt merely to stop using the photographs but to stop using Hamlin's copyrighted materials generally. The Court believes that a reasonable jury could conclude that the cease-and-desist letter was sufficient to put a reasonable person on inquiry as to whether the remainder of the publication was also copyrighted. Consequently, a question of fact exists as to whether the continued copyright infringement that occurred after Trans-Dapt received the letter from Hamlin's attorney was "innocent."

Trans-Dapt's motion for partial summary judgment on the issue of whether its copyright infringement was innocent must therefore be denied.

**C.      Hamlin's TCPA Claim Is Subject to Dismissal.**

In the present case, Trans-Dapt raises several arguments for dismissal of Hamlin's claim under the Tennessee Consumer Protection Act: (1) that Hamlin has not met the heightened pleading standards of Rule 9(b); (2) that the TCPA does not apply to allegations of unfair competition; (3) that Hamlin lacks standing under the statute to bring a TCPA claim; and (4) that the claim is preempted pursuant to § 301 of the Copyright Act. The Court agrees that Hamlin lacks standing to bring the claim and, in the alternative, that the claim is preempted by the Copyright Act, as set forth below. The Court does not reach Trans-Dapt's other arguments.

*(1)      Plaintiff Fails to State a Claim for Damages under the TCPA.*

The TCPA specifically requires a plaintiff to demonstrate that he "suffered an ascertainable loss of money or property as a result of . . . an unfair or deceptive act or practice" in order to be entitled to damages. Tenn. Code Ann. § 47-17-109(a)(1). Based on this provision, Tennessee courts have insisted that, for a plaintiff to state a claim under the TCPA, "the alleged 'unfair or deceptive act or practice' must in fact cause the damages of which the plaintiff complains." *White v. Early*, 211 S.W.3d 723, 743 (Tenn. Ct. App. 2006).

In this case, Trans-Dapt asserts that Hamlin lacks standing to bring a TCPA claim as he has failed to come forward with any facts or support for the allegation that he "suffered an ascertainable loss of money or property as a result of . . . an unfair or deceptive act or practice." (Doc. No. 25, at 7 (quoting Tenn. Code Ann. § 47-17-109(a)(1)).) In response, Hamlin asserts only that he has sold copies of his work, and that "by calculating the number of sales that Defendant secured through the distribution of

Plaintiff's work, Plaintiff can ascertain an amount of money lost" (Doc. No. 31, at 11) and that he therefore has standing to bring his TCPA claim.

The problem with Hamlin's position is that he has not shown that Trans-Dapt's sale of infringing material, the allegedly deceptive act insofar as Trans-Dapt presented the work as its own, caused Hamlin to suffer an ascertainable loss of money. In other words, Hamlin has not shown that, but for their purchase of Trans-Dapt's material, consumers would have bought his publication instead. *Cf. Bridgeport Music, Inc. v. 11C Music*, 154 F. Supp. 2d 1330 (M.D. Tenn. 2001) (holding that copyright holders had standing to sue defendant entities under the TCPA where they alleged that the defendants' sale and distribution of music that "sampled" plaintiff's original works denied them royalties and displaced demand for other of their original works, such that the plaintiffs' losses were "fairly traceable" to the challenged conduct).[2] Likewise, if Hamlin's injury results from lost funds that would have been due to him if Trans-Dapt had obtained authorization to reproduce the copyrighted work, there is no indication that that loss was caused by third parties' reliance on a false impression that Trans-Dapt had a right to reproduce Hamlin's work. *Cf. Pritikin v. Liberation Publ'ns, Inc.*, 83 F. Supp. 2d 920, 924 (N.D. Ill. 1999) (reaching the same conclusion to find that the plaintiff lacked standing to bring a claim under the Illinois Consumer Fraud Act).

Consequently, the Court agrees with Trans-Dapt that Hamlin has not stated a claim for damages under the TCPA. Even if he has, however, as discussed below, the claim is preempted by the Copyright Act.

### *(2)* *Plaintiff's TCPA Claim Is Preempted by the Copyright Act.*

Section 301 of the Copyright Act provides that a state common law or statutory claim is preempted if: "(1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102, 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing 17 U.S.C. § 301(a) (1994) (other citations omitted). The Sixth Circuit,

---

[2] Curiously, the court in *Bridgeport Music*, while holding that the plaintiffs had standing to bring their TCPA claims, also held that the plaintiffs' negligence claim was preempted by the Copyright Act without considering whether the Copyright Act also preempted the TCPA claim.

along with basically every other Circuit, "describes this preemption analysis as encompassing a 'subject matter requirement' and a 'general scope' or 'equivalency' requirement. *Id.* (citation omitted).

The legislative history of the Copyright Act reflects Congress's intention that the preemption principle enunciated in § 301 "be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively." H.R. Rep. No. 94-1476, at 130 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5746. According to at least one commentator, however, Congress's goal of clarity was not realized, and this provision has generated "literally hundreds" of inconsistent and even incoherent decisions. Joseph P. Bauer, *Addressing the Incoherency of the Preemption Provision of the Copyright Act of 1976*, 10 Vand. J. Ent. & Tech. L. 1, 3 (2007) (hereafter referenced as "*Addressing the Incoherency*"). As Professor Bauer explains, the "equivalency" requirement established in § 301 of the Copyright Act "has proven to be the most frequent source of difficulty for the courts in interpreting and applying § 301." *Id.* at 36.

In the present case, it is precisely the application of the equivalency requirement that is at issue. Trans-Dapt asserts that it is entitled to summary judgment as to Hamlin's Tennessee Consumer Protection Act claim on the grounds that that claim is preempted pursuant to § 301 of the Copyright Act. Hamlin, in response, does not dispute that his TCPA/unfair competition claim covers the same "subject matter" as his copyright claims, but he does assert that the claim is not preempted because the "equivalency" requirement is not met.[3]

The Sixth Circuit has formulated the equivalency test as follows:

Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an *extra element* is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Wrench LLC*, 256 F.3d at 456 (emphasis added; citations omitted). In other words, a plaintiff's claim must contain a *meaningful* "additional element," rather than merely an additional allegation such as the defendant's awareness of the plaintiff's rights or claims or the defendant's intention to deprive the plaintiff

---

[3] As Trans-Dapt argues, the Tennessee Court of Appeals has held that the TCPA does not apply to anti-competitive conduct. *Bennett v. Visa U.S.A., Inc.*, 198 S.W.3d 747 (Tenn. Ct. App. 2006). The Court does not address whether the plaintiff has stated a valid claim based on anti-competitive conduct. Rather, the Court concludes that any such claim is preempted by the Copyright Act.

of some allegedly protected right. *Addressing the Incoherency* at 38–39 (citing *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (noting that the proper approach was "a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim")). According to Professor Bauer, the " 'extra element' is also not supplied by the fact that state law affords different relief for the unlawful conduct." *Id.* at 39 (citing *Henry v. Nat'l Geographic Soc'y*, 147 F. Supp. 2d 16, 23 (D. Mass. 2001) (preemption was not avoided by the availability of treble damages and attorneys' fees for a violation of an unfair competition statute)). Thus, under this formulation of the rule, the Sixth Circuit in *Wrench LLC* held that the plaintiff's state law implied-in-fact contract claim survived preemption because it required a showing that the defendant breached an actual promise to pay for the plaintiffs' creative work. It was "not the use of the work alone but the failure to pay for it that violates the contract and gives rise to the right to recover damages." *Wrench LLC*, 256 F.3d at 456. The court explained further:

> An extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display [required to show a violation of the Copy Right Act], in order to constitute the state-created cause of action. The extra element is the promise to pay. This extra element does change the nature of the action so that it is qualitatively different from a copyright infringement claim. The qualitative difference includes the requirement of proof of an enforceable promise and a breach thereof which requires, inter alia, proof of mutual assent and consideration, as well as proof of the value of the work and [defendant's] use thereof.

*Id.*

The question posed here is whether Hamlin's TCPA claim is equivalent to his Copyright Act claims. The Copyright Act basically guarantees the "exclusive rights" of reproduction, derivation, distribution, public performance, and public display to copyright owners. 17 U.S.C. § 106. According to the terms of Hamlin's complaint, his TCPA claim is premised solely upon an allegation that the same facts that are claimed to give rise to Copyright Act claims "are and were willful and constitute . . . unfair or deceptive acts or practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*" (Compl. § 36.) In his response to Trans-Dapt's motion, Hamlin further clarifies that he does not seek to state a claim for fraud; rather, he contends that Trans-Dapt's "business practices were unfair because they misrepresented Plaintiff's ideas and work to consumers as if they were Defendant's own. They are exactly the type of unfair or deceptive business practices that the TCPA is intended to punish." (Doc. No. 31, at 10.) Hamlin continues, "Defendant created confusion as to the source of the

ideas and techniques that were produced in Plaintiff's Original Work when Defendant lead consumers to believe these were Defendant's ideas and work." (*Id.*)

Unfortunately for Hamlin, the rights he seeks to vindicate under the TCPA are precisely equivalent to the rights he seeks to vindicate under the Copyright Act. Although Hamlin attempts to avoid preemption by claiming that a copyright infringement claim is a "strict liability offense" while a TCPA claim requires an intent to engage in an unfair or deceptive act, this attempt is unavailing. First, copyright infringement is not a strict liability claim (unlike patent infringement), as it requires at least an intent to copy, even if not an intent to infringe. *See Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1169 (7th Cir. 1997). Second, the TCPA does not require a showing that the defendant's deceptive or unfair conduct was knowing or willful. Tenn. Code Ann. § 47-18-109(a)(3); *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 n.13 (Tenn. 1999); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 306 (Tenn. Ct. App. 1984). Finally, even assuming different degrees of intent are required under the two statutory schemes, that distinction is not sufficient to create a "qualitative" difference between the claims. *Cf. Strombach v. New Line Cinema*, 384 F.3d 293, 307 (6th Cir. 2004) (affirming dismissal of plaintiff's tortious interference claim on preemption grounds on the basis that it was not qualitatively different from his copyright infringement claim, even though "intentional interference" was an element of the tortious interference claim, and rejecting the plaintiff's claim that "the development of his reputation" was an "extra element" that would allow the claim to avoid preemption).

As Professor Bauer recognized in his comprehensive review of the relevant case law, claims based on unfair competition *can* arise outside the context of alleged misuse of copyrighted or copyrightable materials and as such would not be preempted. "However, in the majority of the reported cases in which clashes between unfair competition claims and the copyright regime were presented, the courts properly found that the state claims were preempted." *Addressing the Incoherency* at 42 (citing, for example, *ATC Distrib. Group, Inc. v. Whatever It Takes Transmission and Parts, Inc.*, 402 F.3d 700, 713 (6th Cir. 2005) (holding that an unfair competition claim based on misappropriation of catalog numbers was completely preempted by the Copyright Act); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 785-90 (5th Cir. 1999) (holding that the Copyright Act preempted an unfair competition claim that lacked any qualitatively different elements). Likewise, most of the cases this Court has located

addressing the question of whether a claim under a state consumer protection act is preempted have answered affirmatively. *See, e.g.*, *Rutledge v. High Point Regional Health System*, 558 F. Supp. 2d 611, 619 (M.D.N.C. 2008) (noting that the Copyright Act requires a party to establish (1) ownership of a valid copyright and (2) encroachment on one of the exclusive rights conferred by the copyright, and that a claim under the state's Uniform Deceptive Trade Practices Act required a plaintiff to establish that (1) the defendant engaged in an "unfair" or "deceptive" act or practice; (2) the act was in or affecting commerce; and (3) the act injured the plaintiff, and holding that the state statute did not require an element in addition to those necessary to constitute a *prima facie* claim of copyright infringement); *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1249–50 (W.D. Wash. 2007) (holding that plaintiff's Washington Consumer Protection Act claim was preempted "because there are no 'extra elements' of CPA claims that 'makes the right asserted qualitatively different from the rights protected under the Copyright Act," and noting in particular that the plaintiff's consumer protection act claim contained "no distinct factual allegations. It simply includes the 'foregoing acts of Defendants' and 'incorporates by reference the allegations' set forth earlier in the amended complaint . . . set[ting] forth plaintiff's copyright claims").

Similarly, the Southern District of Florida dismissed a plaintiff's unfair competition claim as preempted by the Copyright Act despite plaintiff's claim that the gravamen of its unfair competition claim went to "the question of marketing." *Law Bulletin Publ'g v. LRP Publ'ns, Inc.*, No. 98-8122-CIV, 1998 WL 1969648, at *4 (S.D. Fla. June 18, 1998). In analyzing the issue, the court characterized the plaintiff's claim as a "reverse passing off" claim, where the defendant falsely attributed his own name to his competitor's product, and noted that "[t]he majority of courts to consider the issue have concluded that common law reverse passing off claims are preempted by the Copyright Act." *Id.* (citations omitted). Further, the court observed that

> misrepresentation . . . leading to consumer confusion is present only minimally in the reverse passing off context. . . . "[V]irtually every copyright infringement claim inherently involves this minimal degree of misrepresentation as to the creator of the allegedly infringing work. To permit this unfair competition claim to go forward under this theory of misrepresentation would effectively render the Copyright Act's preemption a nullity."

*Id.* (quoting *Fasa Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1361 (N.D. Ill. 1994)).

Likewise here, the facts alleged in the complaint demonstrate that Hamlin's unfair competition/TCPA claim is based solely on rights granted by the Copyright Act: that the defendant

reproduced and distributed derivative works based on the plaintiff's copyrighted work. *Cf. Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998) (affirming dismissal of the plaintiff's unfair competition claim on the same grounds). Hamlin's claim that Trans-Dapt violated the TCPA by knowingly and intentionally violating his copyright still is not *qualitatively* different from a claim of intentional copyright infringement under the Copyright Act.

Even assuming Hamlin has stated a claim for damages under the TCPA, that claim is preempted by the Copyright Act.

**IV.   CONCLUSION**

For the reasons set forth above, the defendant's motion will be granted in part and denied in part. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge